Yes, we did. We were going to send a search party out for you. I was worried about my parking, but good morning. May it please the court, I'm Richard Morrow, here to represent Casimiro Amezcua. Amezcua? I believe so. Okay, thank you. And I believe your first question you might ask would be about totality of the circumstances. And I struggle with that one a little bit because what we're asking... Totality of the circumstances about what? I'm sorry? Well, go ahead. Okay. What we're asking is essentially is a remand or a new trial because of the fact that Mr. Amezcua's attorney essentially dropped the ball and didn't call an essential witness. Ms. Morales. I'm sorry? We're talking about not calling Ms. Morales at the second trial. Right. Okay. But the first trial didn't end in a hung jury. The first trial ended in a conviction. Right. Right. And then there was a remand because there was a determination by a different panel on a different day many years ago that some evidence was admitted pertinent to the co-defendant that was apparently unfairly prejudicial. Right? Right. Okay. So at the second trial, there I think is a discrepancy in the record about why she wasn't called. But why is it that we should, if you focus on the second prong, if you would, for the Strickland analysis, why is it that we should decide that the record compels a contrary conclusion here, that calling her would have made such a difference that we're left with grave doubt? Well, when I look at what she talked about kind of carefully in the last few days. She was a pretty wobbly witness, right? Even at the first trial, she was pretty wobbly. Sure. She was a typical witness in this kind of a case, I think, especially where you've got gangs involved and this kind of thing. There's no doubt that she wasn't the perfect witness, and I don't think you can ever expect a perfect lawyer. And that's why we're a little reluctant to complain about another attorney's performance. But when you look carefully at what Mr. Obizo says, and, of course, the thing that happens, the first thing that happens in this trial is Mr. Amescuo's attorney walks in and says, let's admit Mr. Obizo's testimony. My client said the death certificate looked real. He actually admits his client's own statements to him in confidence. I mean, the things that happened. So now you're talking about the second trial. Right. And by the time of the second trial, Mr. Obizo was dead. Right. He had passed away. There was a death certificate from Mexico indicating that this witness was certainly unavailable. So there's this flavor of suggestion that there should have been an objection to admitting that testimony, the prior sworn testimony, but what would that objection have been? Well, you would just simply put the people to their burden of proving unavailability rather than simply assisting the prosecution. But you haven't demonstrated now that he wasn't unavailable. I mean, although you cast aspersions on the death certificate, no one's ever gone and demonstrated that it was not a valid death certificate. Well, actually, what the attorney for Mr. Amescuo did is try to confirm. No, I'm saying in the habeas, though, in the habeas, if you didn't demonstrate that there was any possibility of prevailing by challenging the death certificate, then you don't have anything, right? Well, this is why I'm going to go into the totality and looking at counsel's performance as completely. You can't go to the totality on that because you haven't demonstrated there was anything wrong with that. Anything wrong with not challenging the death certificate? Correct, if there was nothing to challenge. Well, there's evidence code sections that talk about introduction of former testimony, and you would simply put the people to their burden of trying to prove. But if he knew very well that the guy was dead, for example, and that they would be able to prove it up if he challenged it, then what was the point of challenging it? When someone walks into court with a Mexican death certificate that I can't even read? I'm sorry, I'm not understanding your question. Well, I guess my question is lawyers know things that aren't necessarily on pieces of paper, i.e., that this guy is dead. He might well know that. Unless you can demonstrate that he had something to challenge, because if he had challenged it, it wouldn't have gotten someplace, then how can we say that this was either ineffective representation or prejudicial? Well, okay, let's say you were on trial, and your lawyer comes to you, and you're in custody, and he says, what do you think about this death certificate? And starts talking to you in confidence about how we're going to verify it's an actual, you know, we're going to provide some foundation for this Mexican death certificate. And you make some statements, and the next thing you know, you walk into the courtroom, and he's repeating what you just said. Does the COA in this case cover the death certificate? The what? The COA. Does the COA cover the death certificate? I think the answer is no. No, no. He's talking about Ms. Morales' testimony, and that's kind of where I am. All right, so let's just talk about Ms. Morales' testimony. Okay. So why was he ineffective for not calling Ms. Morales? Okay. Well, and it ties into Mr. Obisio, of course, because Mr. Obisio's testimony simply comes in, we know that happened, whether it's objectionable or not. When you look at Mr. Obisio's testimony overall, he basically says, I had nothing to do with this. I didn't go inside and talk about the guns with Ralph Robles or his girlfriend, Ms. Morales. And your defense theory was that he could have been the shooter, right? That was the defense theory at trial. I don't mean yours. I recognize you weren't the defense counsel. Certainly. That was the theory, right? It's certainly a legitimate defense theory. Okay. So what did Ms. Robles bring to that trial? What would she have brought that could have actually changed the outcome? Well, her testimony was that she was paged by Mr. Obisio. He was a main player. He was someone that was actually arguing with her to get Ralph Robles to come along with them and do something. She contradicted him on several other good points. For example, she had phone records that could have been brought out to show it was Mr. Obisio that paged her. That was something someone dropped the ball on. She knew Mr. Obisio to be a Florencia 13 gang member, and he denied that. Later he said, I hang out with these guys. I'm an associate. Go ahead. I'm not trying to interrupt you, but whatever it is she could have brought seems to me that would have been awfully fuzzy. And then she had on the other side of the ledger, given that we're in habeas, on the other side of the ledger there were folks who were at the scene of the shooting, right? Right. What would her testimony have overcome that? The eyewitness account. Well, she said that she knew both Mr. Obisio and she knew Mr. Morales, and she invited this group of people into her home. But she wasn't a witness to the shooting, right? No, right. But she said that Mr. – I'm not sure if she ever said that Mr. Mescua was never with the group, but she denied seeing him that night. No, she didn't say that. No, she didn't. That's the key to why – She never denied that she saw him or that he was with the group. She just said she didn't know – there were other people there. She didn't know who they were. Right, okay. So that's why it wasn't particularly useful because she didn't – and in fact was in some ways harmful because she didn't negate the notion that he was one of them. Except that she says, I know him, and I invited this group into my house, and I argued with some of them, and it seemed like she had sufficient interaction. If she knows the guy – she would have been presumably that much more able to identify him, to recognize him, to remember him, and she really didn't, right? Say he was part of the group. Did you want to reserve some time? You're down to two minutes. Did you want to reserve some time? Oh, sure. Okay. Thank you. Sure. Good morning, Your Honors, and may it please the Court. Kimberly Donohue, California, Deputy Attorney General, on behalf of Respondent. Appellant has failed to meet his burden of establishing an effective assistance of counsel. He cannot reach the burden of showing that there is any prejudice based on his counsel's failure to call or decision not to call Ms. Morales, and in any event, the decision was a tactical one. Did the State Court reach the issue of prejudice? I have a question. Did the State Court of Appeals reach the prejudice question? We all have the same question, apparently, yes. It's a hot question. No, the State Court of Appeals actually made the decision that – or, excuse me, reached the conclusion that the decision may have been a tactical one. Can you help me out with that? I recognize that that was expressed. I recognize what defense counsel had to say about that, said it was strategic or tactical, but how in the world is it tactical to not call her? What's the downside? Well, the downside is exactly what we've been discussing earlier, is that Ms. Morales' testimony opens the door to the possibility that Mr. Imezcua was part of the group that was part of the shooting that night. Why? Because, well, specifically, after the shooting. I mean, the door's been opened, right? There's eyewitnesses at the scene, so the door is open. Sure, absolutely. And in addition to that, though, I think that the purpose that appellant has been arguing that he would want to call her in the second trial is to impeach Mr. Obezo's testimony. Right. Well, again, there are other witnesses that can impeach Mr. Obezo's testimony without further opening the door to the possibility that Mr. Imezcua was there. As the courts recognized previously, her testimony that she did not see all of the people who were outside her apartment that evening after the shooting, again, leaves open that possibility. But additionally, when you look at the testimony of other witnesses, Mr. Robles, for example, his testimony does impeach Mr. Obezo's testimony. With respect to his gang membership, Mr. Robles did testify contradictory to Mr. Obezo. Yes, but that's not tactical. I mean, in other words, it may be that it was cumulative, but tactical suggests that there's a downside to doing it, and what would the downside be? Sure. What's the reason not to do it? What's the reason not to do it, especially when you have – I mean, if she was, in fact, unavailable, you have her testimony. Correct, yes. And this Court has held, though, that when a witness has both helpful testimony as well as harmful testimony, a trial counsel's decision not to call that witness does not rise to the level of deficient performance. But the only harm – I mean, it isn't – there's only a hole. In other words, her testimony leaves open the possibility that he was there. It doesn't say he was there. That's correct, Your Honor. The worst of it. I'm sorry, go ahead. That's the worst of it, right? Yes, that's my understanding. He could have been there. He could have been there. Sure. And I think the other thing also to look at with this particular witness is that in the first trial, the vast majority of her testimony actually had to do with appellant's co-defendant. And so, again, the trial court, in characterizing her testimony as only marginally beneficial, is an accurate one here. Again, because as Your Honor has mentioned, at worst it opens up the possibility that Mr. Amesqua was there. But, again, appellant was able to present his defense using in the retrial the sole testimony of Mr. Robles to impeach Mr. Obezo. And, again, you do have the additional identification witnesses who identified Mr. Amesqua as one of the two shooters. They were at the shooting. Ms. Morales was not at the shooting. And so to preclude the ability for the prosecution to further argue that Mr. Amesqua was there both before, during, and after the shooting, it was a tactical decision not to call her by defense counsel. What's the appropriate standard for us for the prejudice review if the state court didn't reach prejudice? I believe that the proper standard is a de novo standard in that case because the state court did not reach that. But, again, either way, whether you can find prejudice or deficient performance, both of those are required in order to grant relief in this case. And as our briefing has made clear and as I'm arguing here today, neither one of those prongs has been met by appellant in this case. Anything further? The only thing that I would say is the same reasons why I argue that it's tactical are the same reasons why there's no prejudice in this case. Thank you, counsel. Thank you. Just briefly, Your Honors. She mentioned the ID by several people. Well, they were different in the trials. But, basically, I have seen many cases. I've read an appeal. I'm sure you've probably written them, where 20 years later we get DNA evidence and someone who was 100% certain at trial has now formally ID'd somebody. Now we find out there was a problem. And I would have felt a lot more comfortable in this case, as many cases, if there was something of a blind six-pack procedure, if you don't have interested detectives doing the six-pack, if you had some kind of video evidence of what happened during the six-pack. I just don't feel real comfortable with six-pack evidence as proof of guilt. And I would submit. Thank you, counsel. Thank you. The next case is Jump v. Kruger, 14-56662.
judges: Berzon, Christen, Nguyen